O

# United States District Court
# Central District of California

| | |
|---|---|
| AARON ELMORE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CVS PHARMACY, INC.; GARFIELD BEACH CVS, LLC; CVS HEALTH CORP.; and DOES 1–20, inclusive,<br><br>　　　　　Defendants. | Case No. 2:16-cv-05603-ODW(ASx)<br><br>**ORDER GRANTING DEFENDANTS' PETITION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [13]** |

## I.　INTRODUCTION

Currently before the Court is Defendants CVS Pharmacy Inc., Garfield Beach CVS, LLC, and CVS Health Corp. (collectively, "CVS") Petition to compel arbitration and dismiss or, in the alternative, stay proceedings pending the outcome of the arbitration. (Motion to Compel ("Mot."), ECF No. 13.) Plaintiff Aaron Elmore filed an Opposition to the Petition on September 26, 2016. (ECF No. 14.) CVS filed its Reply brief on October 3, 2016. (ECF No. 15.) For the reasons discussed below, the Court **GRANTS** CVS's Petition.[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for disposition without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL ALLEGATIONS

Garfield Beach CVS operates a number of retail stores and pharmacies throughout the State of California. (Luker Decl. ¶ 7.) In June 2013, Garfield Beach CVS hired Elmore. (Seymour Decl. ¶ 2.) In October 2014, CVS Health instituted a company-wide Arbitration of Workplace Legal Disputes Policy ("Arbitration Policy") that applied to all of its subsidiaries, affiliates, and their employees, including Garfield Beach CVS and Elmore. (*Id.* ¶ 3.) Elmore was given a copy of the Arbitration Policy with the CVS Health Colleague Guide to Arbitration ("Arbitration Guide"). (*Id.*) The Arbitration Guide states:

> Colleagues' Rights
> . . .
> Arbitration is a matter of contract between the colleague and CVS Health. Colleagues accept the policy by continuing their employment with CVS Health after becoming aware of the policy. With that being said, we want colleagues' participation to be voluntary. Colleagues will be asked to acknowledge and agree to the policy, but from the time that a colleague first views or receives the policy, he or she has thirty days to opt out of the policy.
> . . . .
> How to Opt Out
> In order to opt out, a colleague must mail a written, signed, and dated letter stating clearly that he or she wishes to opt out of the CVS Health Arbitration of Workplace Legal Dispute Policy. The letter must be mailed to CVS Health, P.O. Box 969, Woonsocket, RI 02895. In order to be effective, the colleague's opt out notice must be postmarked no later than 30 days after the date the colleague first view or receives the policy. Please note, sending in a timely notice is the only way to opt out. A colleague cannot opt out by refusing to complete training or attend meetings about the policy.

(*Id.*, Ex. A at 7.)

The Arbitration Policy mandates arbitration for the following disputes:

> <u>Claims Covered by This Policy.</u>  Except as otherwise stated in this Policy, Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successor or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.
> Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods . . . and other legal authorities relating to employment.

*(Id.*, Ex. A at 9–10.)

To implement its Arbitration Policy, CVS required all employees, including Elmore, to complete an electronic LEARNet training course. (*Id.* ¶ 4.) Employees access the course by logging in at a computer using unique log-in credentials and a personalized password. (*Id.*) The course requires employees to click on a link that displays the Arbitration Guide and an entire copy of Arbitration Policy. (*Id.*) To complete the Arbitration Training, employees must electronically sign an acknowledgement confirming they understand that they must resolve all disputes with CVS through arbitration, and that they have thirty days in which to opt out of the arbitration agreement. (*Id.*, Ex. B at 5.) On March 11, 2015, Elmore completed the arbitration training and electronically signed the acknowledgment. (*Id.* ¶ 5.) Elmore continued to work for Garfield Beach CVS and never opted out of the Arbitration Policy. (*Id.* ¶ 6.)

Elmore filed his complaint in state court on June 20, 2016, asserting ten causes of action: (1) failure to pay meal and rest period compensation; (2) failure to pay overtime compensation; (3) failure to pay minimum wage and wages for all hours worked; (4) failure to pay timely earned wages; (5) failure to pay timely earned wages

upon separation of employment; (6) failure to provide accurate wage statements in violation of California Labor Code section 226; (7) individual and Private Attorney General Act representative claims; (8) unfair competition in violation of California Business and Professions Code section 17200; (9) wrongful termination in violation of public policy; and (10) retaliation in violation of the Labor Code section 1102.5. (ECF No. 1-4.) CVS removed the case to federal court on July 27, 2016, and subsequently petitioned to compel arbitration. (ECF Nos. 1, 13.) That Petition is now before the Court for review.

## III. LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The FAA adopts a general policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 24–25 (1983); *Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall St. Assoc.*, 552 U.S. at 582. In determining whether to issue an order compelling arbitration, a court may not review the merits of the dispute, and generally must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid arbitration agreement, and (3) whether the dispute falls within the scope of the arbitration agreement. *See Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991). If each question is answered in the affirmative, a court must order the parties to arbitrate in accordance with the terms of their agreement. 9 U.S.C. § 4.

## IV. DISCUSSION

### A. Application of the FAA

The first issue to address is whether the FAA applies to the present contract at all. Section 2 of the FAA provides for the enforcement of arbitration provisions in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 200 (1956). The term "involving commerce" is the functional equivalent of the more familiar term "affecting commerce," words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (per curiam). To fall within the outer reaches of the Commerce Clause, the contract at issue must involve a party who was "working 'in' commerce," "producing goods for commerce," or "engaging in activity that affected commerce." *Bernardt*, 350 U.S. at 201.

It is undisputed that Elmore was employed by a national corporation that does business throughout the United States. Specifically, Garfield Beach CVS operates retail stores and pharmacies throughout the State of California and sells merchandise that it receives from across state lines. (Lucker Decl. ¶ 7.) Accordingly, the FAA governs Elmore's arbitration agreement.

### B. Delegation of Arbitrability to the Arbitrator

CVS argues that the parties delegated the issue of arbitrability to the arbitrator. While it is usually the court's task to "determine whether the parties agreed to arbitrate the dispute," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), the court "will be divested of that authority if the parties 'clearly and unmistakably provide' that an arbitrator is to decide whether a dispute is subject to arbitration." *New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013).

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

A viable contract under California law requires: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999). Here, there appears to be no question that Elmore was "capable of contracting," and that an agreement to arbitrate is a "lawful object." Further, Elmore manifested his consent to arbitrating the question of arbitrability by digitally signing the Arbitration Agreement. Finally, because the agreement to arbitration arbitrability was mutual, there was sufficient consideration. *See, e.g.*, *Circuit City Stores, Inc. v. Najd*, 294 F. 3d 1104, 1108 (9th Cir. 2002) (a promise to be bound by the arbitration process itself serves as an adequate consideration); *Strotz v. Dean Witter Reynolds*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other.").

Moreover, the arbitration agreement clearly and unmistakably demonstrates the parties' intent to arbitrate the issue of arbitrability. The second page of the Arbitration Agreement clearly states that the issues to be arbitrated "include disputes arising out of or relating to the validity, enforceability or breach of this [Agreement]," except as they relate to class action waivers, which are not at issue here. (Seymour Decl. ¶ 3, Exh. A at 10.) Elmore does not appear to argue otherwise. Thus, the Court concludes that Elmore validly agreed to arbitrate the question of arbitrability.

**C.     Whether the Assertion of Arbitrability is "Wholly Groundless"**

Once the court determines that the parties delegated the question of arbitrability to the arbitrator, it conducts "a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466

F.3d 1366, 1371 (Fed. Cir. 2006); *Bitstamp Ltd. v. Ripple Labs Inc.*, No. 15-CV-01503-WHO, 2015 WL 4692418, at *4 (N.D. Cal. Aug. 6, 2015); *Baysand Inc. v. Toshiba Corp.*, No. 15-CV-02425-BLF, 2015 WL 7293651, at *3 (N.D. Cal. Nov. 19, 2015). Here, the agreement subjects to arbitration "any and all legal claims, disputes or controversies that . . . [Elmore] may have, now or in the future, against [CVS] . . . arising out of or related to [Elmore's] employment with CVS Health or the termination of [Elmore's] employment." All of Elmore's claims in this lawsuit appear to arise out of his employment with CVS, and thus the Court is satisfied that the assertion of arbitrability is not "wholly groundless."

Elmore's only argument in opposition to CVS's Petition is that the Arbitration Agreement is procedurally and substantively unconscionable under California law. However, this issue goes to the arbitrability of the dispute, which must be decided by the arbitrator. *Brennan*, 796 F.3d at 1133; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). The only unconscionability issue the Court may consider is whether the delegation of this decision-making power is *itself* unconscionable; however, Elmore makes no such argument. Thus, Elmore's argument fails.

## V. CONCLUSION

Based on the foregoing reasons, CVS's Petition to Compel Arbitration is **GRANTED**. (ECF No. 13.) The Court **STAYS** Plaintiff's Claims One through Six, and Eight through Ten pending the completion of arbitration.

**IT IS SO ORDERED.**

November 9, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**